**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RAYMOND TALBOT | : | |
| | : | |
| Plaintiff, | : | Civ. No. 10-5569 (DRD) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

Langton & Alter
On the Brief:
    Abraham S. Alter
P.O. Box 1798
1600 St. Georges Avenue
Rahway, NJ  07065
    *Attorneys for Plaintiff*

Paul J. Fishman
United States Attorney
District of New Jersey
By:    Vernon Norwood
        Special Assistant U.S. Attorney
        c/o Social Security Administration
        26 Federal Plaza, Room 3904
        New York, New York  10278-0004

Of Counsel:
    Stephen P. Conte
    Chief Counsel – Region II
    Social Security Administration
    Office of the General Counsel
        *Attorneys for Defendant*

**Debevoise, Senior District Judge**

Pursuant to 42 U.S.C. § 405(g) Plaintiff, Raymond Talbot, seeks review of a determination of the Commissioner of Social Security that denied Plaintiff's application for disability insurance benefits ("DIB") on the ground that Plaintiff was not disabled prior to the date he last met the disability insured requirements under the Social Security Act.  For the reasons set forth below the decision of the Commissioner will be affirmed.

## I. Procedural History

In September 2007, Plaintiff filed concurrent applications for DIB and Supplemental Security Income ("SSI") in which he alleged disability since March 1, 2004 due to disorders of the back (discogenic and degenerative), a knee condition, diabetes, hypertension and obesity.  The application for SSI was approved on September 30, 2007.  The claim for DIB was denied at the initial and reconsideration levels of appeal.  Plaintiff requested a hearing, which took place before the ALJ on December 23, 2009.  On January 4, 2010 the ALJ issued an unfavorable decision.

Plaintiff sought review in the Appeals Court which found no grounds to review.  The current action was then timely commenced.

## II.  Background

At the December 23, 2009 hearing before the ALJ Plaintiff testified that he was 53 years of age, that he was six feet tall and weighed roughly 300 pounds.  He came alone to the hearing by bus.  He does not drive, having had his license suspended for six months and never having renewed it.  Plaintiff testified that his highest level of schooling was 10th grade.  He last worked for Walmart, where he was laid off in 2004.  (His earnings record shows that he last worked in 2002).  He had worked in the order department overnight, stocking.

Plaintiff said he had a bad back, spasms, sciatica in his legs and his knees hurt.  His problem with his back began six years prior to the hearing.  He has diabetes and takes insulin by needle.  He was diagnosed four years ago.  He was sent for tests of his kidneys, but has heard nothing concerning them.  During the past five years he was not hospitalized.  About five years ago he was involved with alcohol or illegal drugs but presently attends a clinic for methadone.  He testified that it was about 2004 that he became unable to work.

Elaborating on his disabilities, Plaintiff testified that in March of 2005 he weighed 344 pounds, had back pains, suffered from diabetes but was not yet taking insulin, had problems with his knees.  He stated that he probably had psychiatric difficulties but didn't realize it until he started having panic attacks.  He was not treated for the psychiatric problems.

In 2005-2006, because of pain in his back and knees, he would stop and rest every five minutes when walking.  He was using a cane in those years and occasionally used one at the time of the hearing.  He had no difficulty sitting.

For about 10 years Plaintiff has been living alone in a rooming house and takes care of the cooking, cleaning and grocery shopping.  He visits with friends and spends the day watching TV and reading the paper.

The medical evidence was sparse, consisting primarily of the reports of two consultative physicians.  Dr. Allen Glushakow examined Plaintiff on May 19, 2008 at the request of the State agency.  He noted that an x-ray, taken on December 8, 2005, revealed degenerative disc disease and degenerative joint disease of the lumbar spine with a rotatory scoliosis, convexity to the right. The doctor also noted that an x-ray of Plaintiff's right knee, taken on September 16, 2003, revealed osteoarthritis with no fracture, loose body, or joint effusion.  Plaintiff weighed 320 pounds.  His gait was normal.  He was able to squat as well as walk on his heels and toes.  He

demonstrated full muscle strength and a full range of motion as well as normal reflexes and sensations throughout his arms and legs. Plaintiff's cervical spine exhibited a full range of motion with no spasms or tenderness. Straight leg raising tests were negative bilaterally. The doctor assessed degenerative disc disease and morbid obesity.

Dr. Deogracias Bustos, a State agency medical consultant, reviewed the evidence of record on May 22, 2008, and assessed that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently. During the course of an eight hour workday Plaintiff could sit for about six hours as well as stand and/or walk for four hours. Plaintiff could not climb ladders, ropes, or scaffolds. His impairments resulted in no manipulative limitations. He should avoid concentrated exposure to extreme temperatures, wetness, humidity, vibration, fumes, odors, gases, poor ventilation and hazards.

### III.  Determination of Disability

A district court's review of the Commissioner's factual conclusions is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A district court is bound by the Commissioner's factual findings that are supported by substantial evidence, even if the district court would have reached a different factual conclusion. Hartranft v. Apfel, 181 F. 3d 358, 360 (3d Cir. 1999). A district court, however, exercises plenary review of all legal issues in a case. Knepp v. Apfel, 204 F. 3d 78, 83 (3d Cir. 2000).

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a

disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work," § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

Step 1: Substantial Gainful Activity. The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. 404.1520(a)(4)(i). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(i).

Step 2: Severity of Impairment. If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Impairment is severe when it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or has not met the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(ii).

Step 3. Listed Impairments. If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the

ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 months durational requirement, then the ALJ must find that the claimant is disabled. § 404.1520(a)(4)(iii).

Step 4. Past Relevant Work. If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ finds that the individual has the capacity to perform past work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(iv).

Step 5. Adjustment to Other Work. If the claimant cannot perform past work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of obtaining gainful employment other than his past relevant

work and that jobs, which the individual can perform, exist in substantial numbers in the national economy.  Bowen v. Yuckert, 482 U.S. 137, 146 n, 5 (1987).

### IV.  **The ALJ's Decision**

The ALJ noted the unusual sequence of events in this case.  Plaintiff had filed both a DIB and SSI application on September 20, 2007, originally alleging disability beginning March 1, 2004.  The SSI application was approved as of September 30, 2007.  For the purposes of the DIB application, Plaintiff amended his onset date to March 31, 2006.

The Plaintiff's earnings record shows that he has acquired sufficient quarters of coverage to remain insured through March 31, 2006.  The ALJ noted that Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

The ALJ noted the five step evaluation process.  As to the first two steps the ALJ found:

> 1.  The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of March 31, 2006 through his date last insured of March 31, 2006 (20 CFR 404.1571 et seq.).
>
> 3.  Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, obesity, diabetes mellitus, osteoarthritis of the knee, and hypertension (20 CFR 404.1520(c)).

These impairments result in more than minimal functional limitations.

At step three the ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

To arrive at this conclusion the ALJ considered separately each impairment that he found to be severe.  He considered listing 1.04 for disorders of the spine, relying on Dr. Glushakow's

7

finding that Plaintiff's motor strength throughout the lower extremities was normal to support his conclusion that Plaintiff does not have the requisite motor loss.

The ALJ considered listing 1.02 for major dysfunction of a joint, but concluded that Plaintiff's joint injury did not result in an inability to ambulate effectively.  With respect to hypertension, the ALJ considered listing 4.02 and found that there was no evidence i) that Plaintiff's ejection fraction is at the severity required by the listing, ii) Plaintiff has not experienced persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living, iii) three or more separate episodes of acute congestive heart failure within a consecutive 12-month period or in the inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less.

With respect to Plaintiff's diabetes mellitus the ALJ considered listing 9.08 and found that it was not met because Plaintiff does not have neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities or Acidosis occurring on the average of once every 2 months documented by appropriate blood chemical tests or retinitis proliferans.

As to obesity, the ALJ's discussion in its entirety reads: "The claimant's obesity does not cause him to equal any listing."

The ALJ found that through the date last insured Plaintiff had the residual functional capacity to perform light work as defined in CFR 404.1567(b) except that he could only stand or walk for four hours out of an eight hour day.  The ALJ evaluated the intensity of Plaintiff's pain and symptoms.  He referred to Dr. Glushakow's orthopedic examination that revealed "some findings consistent with the [Plaintiff's] conditions" and to Dr. Bustos's opinion, based on Dr. Glushakow's findings, that "[Plaintiff] had the residual functional capacity to perform light work

8

except the [Plaintiff] could only stand or walk for four hours out of an eight hour day . . ."
Because the two doctors' opinions represented the only medical opinions in the record and were not contradictory with each other, the ALJ gave them great weight.

      The ALJ recited evidence that tended to minimize the extent of Plaintiff's impairments and support a finding that he is not as limited as he alleges. He came to the hearing by a bus. He testified that he has a bad back, with sciatica in his legs and pain in his knees. His diabetes was first diagnosed 4 years ago, but at the time he was not insulin dependent. He has had no hospitalizations in the past 5 years. He has lived in a rooming house for the past 10 years and does his own cooking, shopping and cleaning. He worked in 2002 and was not disabled when he was laid off. Plaintiff claimed that in March 2005 he weighed 344 pounds. He asserts that in 2005-2006 he could only walk 5 minutes before needing to rest. He was then using a cane but only occasionally uses it now. He did not stop work because of physical problems and the ALJ held that the evidence does not support a substantial worsening of his condition around the time of the alleged onset date.

      Tying the evidence to the critical March 2006 date, the ALJ wrote:

> Through the date last insured, the claimant had degenerative disc disease, obesity, diabetes mellitus, osteoarthritis of the knee, and hypertension, but the medical evidence, including the only opinion evidence of record, supports a finding that the claimant had the residual functional capacity to perform light work except the claimant could only stand or walk for four hours out of an eight hour day; the claimant could never climb ladders, rope, or scaffolds; the claimant should have avoided concentrated exposure to extreme temperatures, wetness, humidity, vibration, fumes, odors, gases, poor ventilation, and hazards.
>
> The claimant's medical evidence does not support a finding that the claimant's impairments were as severe as alleged on or before the claimant's date last insured. Although the claimant had diabetes in March 2006 (Exhibit 1F), he was non insulin dependent with no evidence of end organ damage (Exhibit 4F), and he had not been hospitalized for the condition prior to November 2006 (Exhibit 2F), which is significantly later than his onset date. Despite the fact that the claimant fell and injured his right knee in September 2003 and an X-Ray showed

>osteoarthritis, the X-Ray also showed the joint space was intact with no fracture, dislocation, or effusion (Exhibit 11F). While the claimant had degenerative disc disease of the lumbar spine confirmed on an MRI prior to March 2006 (Exhibit 12F), the claimant's received only conservative treatment for this condition prior to March 2006 without any evidence of epidurals, powerful and regular pain medication, or a prescription for the cane the claimant said he was using at that time (Exhibit 1F). The claimant did have hypertension prior to March 2006, but there was no evidence of end organ damage as of May 2008 (Exhibit 4F). Finally, despite the claimant's obesity at 344 lbs in March 2005 (Exhibit 1F), there is no medical evidence that the claimant's obesity reduced his residual functional capacity below the findings in this decision.
>
>The claimant's activities of daily living support a finding that he is not as limited as alleged. He testified that he does his own cooking, shopping and cleaning. He spends his days watching TV and reading the paper.
>
>Finally, the only opinion evidence of record supports the residual functional capacity findings in this decision. The claimant underwent an orthopedic examination by Dr. Allen Glushakow, M.D. in May 2008 that revealed some findings consistent with the claimant's medical conditions (Exhibit 8F). Based on these findings, Dr. Deogracias Bustos opined the claimant could only stand or walk for four hours out of an eight hour day; the claimant could never climb ladders, rope, or scaffolds; the claimant should have avoided concentrated exposure to extreme temperatures, wetness, humidity, vibration, fumes, odors, gases, poor ventilation, and hazards (Exhibit 4F). Dr. Bustos's opinion and Dr. Glushakow's opinion represent the only medical opinions in the record and they are not contradictory with one another or the medical evidence of record. As a result, they are given great weight.
>
>In sum, the above residual functional capacity assessment is supported by the opinions of Dr. Glushakow and Dr. Bustos, the medical evidence of record, the claimant's conservative treatment prior to his date last insured, the claimant's daily activities, and the fact that the claimant did not stop working due to his medical impairments.

At Step 4 the ALJ noted that Plaintiff's past relevant work was a stocker and cleaner, jobs that would require standing or walking more than 4 hours in an eight hour day. Thus Plaintiff was unable to perform any past relevant work.

Turning to Step 5, it was necessary for the ALJ to determine whether, through the date last insured, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that

Plaintiff could have performed. The ALJ held that "[t]hrough the date last insured, if [Plaintiff] had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.18." Referring to the additional limitations on Plaintiff's ability to perform light work (particularly, e.g., the ability to only stand or walk for four hours out of an eight hour day) the ALJ noted that "the additional limitations had little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule. <u>Although the [Plaintiff] is not able to do the full range of light work he is still able to do the full range of sedentary work and is thus considered not disabled under medical vocational rule 201.19.</u>" (emphasis added).

The ALJ's ultimate conclusion was that Plaintiff was not under a disability at any time from March 31, 2006 (the amended onset date) through March 31, 2006 (the date last insured). Plaintiff's application for a period of disability and disability insurance benefits was denied.

### V. <u>Decision</u>

Plaintiff challenges the determination of the Commissioner of Social Security and, in particular, the ALJ's decision on a number of grounds. The essence of Plaintiff's position is that the decision is not supported by substantial evidence and that the ALJ failed to follow the Court of Appeals mandate set forth in <u>Cotter v. Harris</u>, 642 F. 2d 700 (3d Cir. 1981) which held that:

> We need from the ALJ not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication the reviewing Court cannot tell if significant probative evidence was not credited or simply ignored. (<u>Cotter</u> at 705).

The Commissioner acknowledged that Plaintiff was disabled for SSI purposes as of September 30, 2007 on the basis of his application for SSI filed on that date. Plaintiff originally

11

alleged disability as of March 1, 2004 but at the hearing amended the onset date to March 31, 2006, the last date of entitlement to disability benefits. It is still Plaintiff's contention that he actually was disabled long prior to March 31, 2006, but for his purposes it is sufficient that disability be established on or before March 31, 2006.

Plaintiff's brief proceeds on the basis of a misconception, namely, that "[t]he decision was based on the clearly mistaken, legally impossible position that Plaintiff can perform the full range of light work activity and thus his disability is denied by direct application of vocational rule 201.19" (Plaintiff's Brief at 10). In fact the ALJ recognized that Plaintiff could not perform the full range of light work, although he also noted that "the additional limitations had little or no effect on the occupational base of unskilled light work." The ALJ's ultimate finding was that "[a]lthough the [Plaintiff] is not able to do the full range of light work he is still able to do the full range of sedentary work and is thus considered not disabled under medical vocational rule 201.19."

Plaintiff's argument that the decision is not supported by substantial evidence because it does not support a finding that Plaintiff could perform light work misses the point, because the ALJ based his decision on the finding that Plaintiff could do sedentary work.

Plaintiff also challenges the ALJ's finding on the ground that after finding that obesity was not a listed impairment he failed to consider obesity in combination with his other severe impairments and failed to consider obesity at every level of the sequential evaluation.

It is true that at Step 3 of the evaluation process the ALJ simply found that [t]he [Plaintiff's] obesity does not cause him to equal any listing." At Step 3 the ALJ determined that each impairment was not medically equal to the severity criteria of any listed impairments. The impairments, including obesity, were considered as a group both at Step 3 and throughout the

12

ALJ's decision. Dr. Glushakow, to whom reference was often made, examined Plaintiff and provided a thorough evaluation of Plaintiff's physical condition. He observed that although Plaintiff then weighed 320 pounds, his gait was normal and he was able to walk on his heels and toes as well as squat. Plaintiff demonstrated full muscle strength and a full range of motion as well as normal reflexes and sensations throughout his arms and legs. His cervical spine as well as his thoracolumbar spine exhibited a full range of motion with no spasms or tenderness. Straight leg raising tests were negative, bilaterally. Notably, Dr. Bustos, a State agency medical consultant, assessed that plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently. During the course of an eight-hour workday, plaintiff could sit for about six hours as well as stand and/or walk for four hours. Thus despite plaintiff's obesity, his physical condition was otherwise unremarkable and his functional limitations were less than disabling.

 Because there is no separate Listing for obesity, an obese person satisfies the criteria of a Listing only if such person has another impairment that by itself meets a Listing or has an impairment that in combination with obesity meets a Listing. SSR 02-01p. The ALJ will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a Listing, but the combination of impairments is equivalent in severity to a Listed impairment.

 Here, none of plaintiff's treating or examining sources observed or assessed limitations that were of Listings-level severity. Moreover, Dr. Glushakow's clinical findings as well as Dr. Bustos's assessment incorporated plaintiff's obesity. Accordingly, the ALJ afforded significant weight to their findings and assessment. The Court of Appeals for the Third Circuit has held that, as in this case, when an ALJ adopts the physical limitations assessed by plaintiff's examining physician, plaintiff's obesity is understood to have been factored into the decision.

See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (Since the ALJ adopted the limitations assessed by the specialists and the examining physician, who were aware of plaintiff's obesity, the ALJ's decision properly considered plaintiff's obesity).

Thus, the ALJ properly determined that plaintiff failed to meet his burden of demonstrating that his impairments, whether considered singly or in combination, were of Listings-level severity prior to his date last insured.

Plaintiff also challenges the ALJ's decision on the ground that at Step 5 he failed to require the testimony of a vocational expert. This contention is based in part at least upon Plaintiff's misunderstanding of the ALJ's RFC finding. The critical finding was not that Plaintiff could perform the full range of light work; the finding, which is amply supported by the evidence, was that Plaintiff was capable of performing the full range of sedentary work.

At Step 5 the ALJ determined that Plaintiff was not disabled because he could perform work that existed in significant numbers in the national economy. This determination was based on Plaintiff's vocational factors and RFC in conjunction with the Grids. On March 31, 2006 Plaintiff was a younger individual. He had a limited education. His RFC was the ability to perform the full range of sedentary exertional work. Grid Rule 201.19 directed a finding of "not disabled." Factors did not exist that required the ALJ to go outside the Grid system and call upon a vocational expert.[1]

## VI. Conclusion

---

[1] Plaintiff raised two additional arguments:
   i) He contended that his slowly progressing impairments required a medical expert to establish the proper onset date. Dr. Glushakow's observations and Dr. Bustos's assessment demonstrated that Plaintiff was capable of performing at least sedentary work as recently as May 2008, more than two years after Plaintiff's last insured date.
   ii) Plaintiff also contended that since the Commissioner awarded him SSI as of September 2007, his SSI application date, the Commissioner therefore acknowledged that Plaintiff was disabled prior to September 2007. However, in September 2007 Plaintiff was 51 years old, no longer a younger individual, but instead, an individual "closely approaching advanced age." Based on Plaintiff's vocational factors and RFC, Grid Rule 201.09 directed a finding the Plaintiff was disabled.

For the foregoing reasons the Commissioner's decision is supported by substantial evidence and will be affirmed. The Court will file an appropriate order.


December 7, 2012                              *s / Dickinson R. Debevoise*
                                              DICKINSON R. DEBEVOISE
                                              U.S.S.D.J.